# EXHIBIT A

COMPLAINT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION**, as a separate and distinct Receiver of Bank USA, N.A., California National Bank, Citizens National Bank of Teague, Madisonville State Bank, North Houston Bank, Pacific National Bank, Park National Bank, and San Diego National Bank | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| **FBOP CORPORATION** and **PATRICK D. CAVANAUGH** of High Ridge Partners, Inc., not individually, but solely as Trustee-Assignee under FBOP Corporation's Trust Agreement and Assignment for the Benefit of Creditors; **JPMORGAN CHASE BANK, N.A., AS AGENT; BMO HARRIS BANK N.A.**, as successor in interest to M&I **MARSHALL & ILSLEY BANK; ORE HILL HUB FUND LTD.; CANYON BALANCED MASTER FUND, L.P.; MARINER–TRICADA CREDIT STRATEGIES MASTER FUND, LTD.; PMT CREDIT OPPORTUNITIES FUND LTD.; PROSPECT MOUNTAIN FUND LIMITED; STRUCTURED CREDIT OPPORTUNITIES FUND II, LP;** and **GORDON C. WATSON,** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No: 14-cv-04307<br>)<br>) Honorable James F. Holderman |
| Defendants | ) |
| AND | ) |
| **PENSION BENEFIT GUARANTY CORPORATION,** | )<br>)<br>) |
| Plaintiff-Intervenor, | )<br>) |

2

|  |  |
|---|---|
| v. | ) |
|  | ) |
| **FBOP CORPORATION; PATRICK D.** | ) |
| **CAVANAUGH of High Ridge Partners,** | ) |
| **Inc., solely in his capacity as Trustee-Assignee** | ) |
| **under FBOP Corporation's Trust** | ) |
| **Agreement and Assignment for the Benefit** | ) |
| **of Creditors; FEDERAL DEPOSIT** | ) |
| **INSURANCE CORPORATION,** | ) |
| **as Receiver for Bank USA, N.A.,** | ) |
| **California National Bank, Citizens National** | ) |
| **Bank of Teague, Madisonville State Bank,** | ) |
| **North Houston Bank, Pacific National Bank,** | ) |
| **Park National Bank, and San Diego National** | ) |
| **Bank; WELLS FARGO BANK, N.A.,** | ) |
| **as escrow agent pursuant to the escrow** | ) |
| **agreement among the Federal** | ) |
| **Deposit Insurance Corporation, FBOP** | ) |
| **Corporation and Wells Fargo Bank, N.A.,** | ) |
|  | ) |
| **Defendants.** | ) |
|  | ) |

## COMPLAINT OF PLAINTIFF-INTERVENOR PENSION BENEFIT GUARANTY CORPORATION

The Pension Benefit Guaranty Corporation ("PBGC") brings this Complaint against (i) FBOP Corporation ("FBOP"), (ii) Patrick D. Cavanaugh of High Ridge Partners, Inc., solely in his capacity as Trustee-Assignee under FBOP Corporation's Trust Agreement and Assignment for the Benefit of Creditors (the "Trustee-Assignee"), (iii) the Federal Deposit Insurance Corporation as Receiver of Bank USA, N.A., California National Bank, San Diego National Bank, Pacific National Bank, Park National Bank, Community Bank of Lemont, North Houston Bank, Madisonville State Bank, and Citizens National Bank, Teague, Texas ("FDIC-R"), and (iv) Wells Fargo Bank, N.A., as escrow agent pursuant to the Escrow Agreement among the FDIC-R, FBOP, and Wells Fargo Bank, N.A. ("Escrow Agent"), and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1345 claims because PBGC is a wholly owned United States government corporation and federal agency. This Court has supplemental jurisdiction over the state common law claims pursuant to 28 U.S.C. § 1367(a).

2. Venue lies in this Court under 28 U.S.C. § 1391(b)(1).

## PARTIES

3. PBGC is a wholly owned United States government corporation established under Title IV of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA").[1] When an underfunded pension plan terminates, PBGC typically becomes the plan's trustee and, subject to statutory limits, pays benefits to plan participants.[2] PBGC's principal place of business is 1200 K Street, N.W., Washington, D.C. 20005.

4. Defendant FBOP is an Illinois corporation with its principal place of business in Illinois. FBOP is a former bank holding company, which owned Bank USA, N.A., California National Bank, San Diego National Bank, Pacific National Bank, Park National Bank, Community Bank of Lemont, North Houston Bank, Madisonville State Bank, and Citizens National Bank, Teague, Texas (together, the "Banks"). On October 30, 2009, the Banks were taken over by the Federal Deposit Insurance Corporation ("FDIC"), which entered into purchase and assumption agreements with U.S. Bank, N.A. to assume all of the deposits and essentially all of the assets of each of the failed Banks. At the same time, FDIC-R was appointed as receiver for each of the Banks.

---

[1] 29 U.S.C. § 1302(a)

[2] 29 U.S.C. §§ 1302(a)(2), 1321, 1322.

5.     Defendant Patrick D. Cavanaugh of High Ridge Partners, Inc., in his capacity as Trustee-Assignee under FBOP's Trust Agreement and Assignment for the Benefit of Creditors ("Trustee-Assignee") is an individual domiciled in Illinois, with a principal place of business at 140 South Dearborn Street, Chicago, Illinois 60603. On information and belief, FBOP's Trust Agreement and Assignment for the Benefit of Creditors became effective on or about October 5, 2012.

6.     The FDIC is a corporation established by the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811 *et. seq.*, with a regional office located at 300 South Riverside Plaza, Chicago, Illinois 60606. Defendant FDIC-R has been appointed receiver for each of the Banks.

7.     Defendant Wells Fargo Bank, N.A., as escrow agent ("Escrow Agent"), is a national association with its main office in South Dakota and locations in Chicago, Illinois.

## FACTUAL BACKGROUND

*Pension Plan Termination Action and Settlement*

8.     FBOP was the contributing sponsor and plan administrator of the FBOP Corporation Pension Plan (the "Pension Plan"), a defined-benefit pension plan covered by PBGC's termination insurance program under Title IV of ERISA.[3] The Pension Plan provided pension benefits to certain former employees of FBOP and their beneficiaries.

9.     Upon termination of a Pension Plan, a plan sponsor and each member of its controlled group is jointly and severally liable to PBGC for, *inter alia*, the Pension Plan's unfunded benefit liabilities.[4]

---

[3] 29 U.S.C. §§ 1002(16), 1301(a)(1) and (13), 1321(a).

[4] 29 U.S.C. § 1362(a), (b); *see also* 29 U.S.C. § 1301(a)(18).

5

10. Before the Pension Plan was terminated under Title IV of ERISA, PBGC estimated that the Pension Plan's assets were not sufficient to cover all of its promised benefits. Specifically, PBGC estimated that the Pension Plan "unfunded benefit liabilities," as defined in 29 U.S.C. §§ 1301(a)(18) and 1362(a) and (b), totaled approximately $40.5 million.

11. After FDIC put the Banks into receivership, PBGC commenced proceedings against FBOP in this Court on April 27, 2011, seeking a decree terminating the Pension Plan pursuant to 29 U.S.C. § 1342(c) (the "Termination Action").

12. In the Termination Action, PBGC alleged that, as a government agency, it could offset its claims with respect to the Pension Plan against any federal tax refund owed to FBOP or any of its controlled-group members under 26 U.S.C. § 6402 and 31 U.S.C. § 3720A.

13. On August 21, 2012, PBGC and FBOP entered into an agreement to settle the Termination Action (the "PBGC Settlement Agreement"). FBOP's secured lenders, JPMorgan Chase Bank, N.A. ("JPMorgan"), and BMO Harris Bank, N.A. ("BMO"), were also parties to the agreement.

14. Under the PBGC Settlement Agreement, FBOP agreed, *inter alia*, to (1) effectuate termination of the Pension Plan, and (2) not oppose or object to PBGC's referral to the Treasury Offset Program ("TOP"), or any other appropriate federal agency, of an offset of $30 million on account of liabilities due to PBGC as a result of the Pension Plan's termination (the offset claim of $30 million, the "Offset Claim"). Likewise, JPMorgan and BMO agreed, *inter alia*, not to oppose or object to referral to TOP of the PBGC Offset Claim.

15. The PBGC Settlement Agreement does not contemplate a situation where FBOP is paid a federal income tax refund without deduction of the Offset Claim solely as a result of mistake by another federal agency. It was the parties' intention that PBGC receive what it was

entitled to under the federal offset program.

16. On August 21, 2012, PBGC and FBOP entered into an agreement terminating the Pension Plan under 29 U.S.C. § 1342(c), establishing April 21, 2011, as the Pension Plan's termination date, and appointing PBGC as statutory trustee of the Pension Plan.

17. On August 21, 2012, in compliance with 26 U.S.C. § 6402, 29 U.S.C. § 3720A, and the regulations thereunder, PBGC sent FBOP a notice of, *inter alia*, (1) the past-due, legally enforceable debt owed to PBGC in the amount of $30 million, and (2) PBGC's intention to refer the debt to the Financial Management Service for tax refund offset pursuant to 26 U.S.C. § 6402 and 31 U.S.C. § 3720A. PBGC sent a similar notice to FDIC-R.

18. On or about October 23, 2012, PBGC referred its Offset Claim against FBOP to the Financial Management Service (now known as the Bureau of the Fiscal Service or "BFS"). That same day, PBGC recorded the Offset Claim in the TOP.

19. PBGC took all of the necessary actions to effectuate the offset of its Offset Claim against the Refund. PBGC further took all of the necessary actions to record its Offset Claim for offset against the Refund.

20. PBGC has not taken any action that is inconsistent with its right to offset the Offset Claim against the Refund.

21. On December 18, 2012, and January 2, 2013, PBGC received payments of $8,780 and $175, respectively, through the TOP on account of its Offset Claim.

22. With those offsets, PBGC's unpaid the Offset Claim was reduced to $29,991,045.

*Federal Income Tax Refund to FBOP*

23. On or about December 31, 2013, the Department of Treasury paid FBOP a federal tax refund in the amount of approximately $252 million (the "Refund"). On information and

7

belief, the Refund was issued to FBOP through five separate paper checks called "Type A" checks.

24. Each of the five Type A checks was paired with a form entitled "Manual Refund Posting Voucher."

25. On each form, the box labeled "Yes (Allow TOP Offset, BPI-0)" was checked.

26. Before paying FBOP, BFS did not deduct PBGC's Offset Claim from the Refund (the "Offset Failure"). PBGC did not learn of the Offset Failure until PBGC's counsel was informed by FDIC's counsel in March, 2014.

27. In March 2014, PBGC learned from counsel at the FDIC that FBOP had received the Refund without deduction of PBGC's Offset Claim.

28. On information and belief, the sole reason for the Offset Failure was a computer error that affected BFS's payment system through which Type A checks for large dollar amounts are processed, and as a result, the Refund was not processed through TOP (the "Error"). BFS acknowledges that this was a mistake, and on information and belief, has implemented or is implementing a correction for the Error, called "PAM Release 7.0," which BFS scheduled for release in May 2014.

29. Prior to its investigation into the Offset Failure, PBGC had no actual or constructive knowledge of the Error.

30. BFS acknowledges that the Offset Claim should have been deducted from the Refund, and that the reason the Offset Claim was not deducted from the Refund was a mistake caused by the Error.

31. On information and belief, FBOP deposited the Refund into an escrow account held by the Escrow Agent ("Escrow Account") pursuant to the Escrow Agreement between the

FDIC-R and FBOP dated September 30, 2011 (as amended, the "Escrow Agreement").

32. On information and belief, the Refund is currently in the Escrow Account, which is under the control of the Escrow Agent, and will remain in the Escrow Account until the dispute between the FDIC and FBOP (among others) regarding ownership of the Refund is finally resolved.

## COUNT I

### (PBGC ASSERTED AND DID NOT WAIVE ITS OFFSET CLAIM AGAINST THE REFUND)

33. Paragraphs one through 32 are incorporated by reference as if set forth fully herein.

34. As a federal agency, PBGC is authorized to seek offset of a taxpayer's debts to PBGC against, *inter alia*, that taxpayer's overpayment of federal taxes.[5]

35. Pursuant to the PBGC Settlement Agreement, FBOP and PBGC agreed to effectuate termination of the Pension Plan pursuant to 29 U.S.C. § 1342(c).

36. Pursuant to the PBGC Settlement Agreement, PBGC, FBOP, JPMorgan, and BMO agreed to resolution of PBGC's claims against FBOP resulting from termination of the Pension Plan. In relevant part, FBOP agreed not oppose or object to PBGC's referral of the Offset Amount to the TOP, or any other appropriate federal agency, for offset against any federal tax refunds owed to FBOP.

37. After entering the PBGC Settlement Agreement and prior to the issuance and payment of the Refund, PBGC took all necessary action to assert its offset right against FBOP.

38. On August 21, 2012, in compliance with 26 U.S.C. § 6402, 29 U.S.C. § 3720A, and the regulations thereunder, PBGC sent notices to both FBOP and FDIC-R of, *inter alia*, (1)

---

[5] 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A.

the past-due, legally enforceable debt owed to PBGC in the amount of $30 million, and (2) PBGC's intention to refer the debt to the Financial Management Service (now BFS) for federal tax refund offset pursuant to 26 U.S.C. § 6402 and 31 U.S.C. § 3720A.

39. On or about October 23, 2012, PBGC referred the Offset Claim to BFS for offset against any federal tax refund owed to FBOP through TOP. PBGC's Offset Claim was immediately recorded in the TOP system.

40. PBGC took all of the necessary actions to effectuate the offset of its Offset Claim against the Refund. PBGC further took all of the necessary actions to record its Offset Claim for offset against the Refund.

41. PBGC has not taken any action that is inconsistent with its right to offset the Offset Claim against the Refund.

42. PBGC has not waived its right to offset the Offset Claim against the Refund.

43. The Refund was deposited into the escrow. PBGC is the rightful owner and retains the right of offset of $29,991,045 against the Refund that resides in the Escrow Account.

## COUNT II
### (UNJUST ENRICHMENT–FBOP)

44. Paragraphs one through 43 are incorporated by reference as if set forth fully herein.

45. On or about December 31, 2012, the Refund was paid to FBOP. On information and belief, FBOP deposited the Refund in the Escrow Account, which is subject to the Escrow Agreement among FBOP, the FDIC, and the Escrow Agent.

46. PBGC's Offset Claim was, as a result of the Error, mistakenly not deducted from the Refund before the Refund was paid to FBOP. PBGC was entitled to offset of the balance of

the Offset Claim against the Refund.

47. To the extent that FBOP or receives the Refund without deduction of the balance of PBGC's Offset Claim, FBOP will be enriched.

48. PBGC has been impoverished as a result of the Offset Failure and FBOP's right to or receipt of the Refund without deduction of the balance of PBGC's Offset Claim.

49. To the extent that FBOP receives the Refund without deduction of the balance of PBGC's Offset Claim, FBOP will be enriched at PBGC's expense.

50. To the extent that FBOP receives the Refund without deduction of the balance of PBGC's Offset Claim, FBOP will be enriched as a result of the Error, and not as a result of any action taken or not taken by PBGC.

51. FBOP's retention of the Refund without payment to PBGC would violate fundamental principles of justice, equity and good conscience, and would be unjust.

52. The Settlement Agreement does not contemplate a situation where FBOP is paid a federal tax refund without deduction of PBGC's Offset Claim solely as a result of a mistake by another federal agency. Therefore, PBGC has no adequate remedy at law.

## COUNT III

### (UNJUST ENRICHMENT–TRUSTEE-ASSIGNEE)

53. Paragraphs one through 52 are incorporated by reference as if set forth fully herein.

54. On or about December 31, 2012, the Refund was paid to FBOP. On information and belief, FBOP deposited the Refund in the Escrow Account, which is subject to the Escrow Agreement among FBOP, the FDIC-R and the Escrow Agent.

55. PBGC's Offset Claim was, as a result of the Error, mistakenly not deducted from

11

the Refund before the Refund was paid to FBOP. PBGC was entitled to offset of the balance of the Offset Claim against the Refund.

56. To the extent the Trustee-Assignee, on behalf of the trust for which he is Trustee-Assignee ("Trust") receives the Refund without deduction of the balance of PBGC's Offset Claim, the Trustee-Assignee will be enriched.

57. PBGC has been impoverished as a result of the Offset Failure and the Trustee-Assignee's right to or receipt of the Refund without deduction of the balance of PBGC's Offset Claim.

58. To the extent the Trustee-Assignee receives the Refund without deduction of the balance of PBGC's Offset Claim, the Trustee-Assignee will be enriched at PBGC's expense.

59. To the extent the Trustee-Assignee receives the Refund without deduction of the balance of PBGC's Offset Claim, the Trustee-Assignee has been enriched as a result of the Error, and not as a result of any action taken or not taken by PBGC.

60. Retention of the Refund by the Trustee-Assignee violates fundamental principles of justice, equity and good conscience, and would be unjust.

61. There is no agreement between the Trustee-Assignee and PBGC, and no contract governing the obligations of both PBGC and the Trustee-Assignee. Therefore, there is no adequate remedy at law.

## COUNT IV

### (UNJUST ENRICHMENT–FDIC-R)

62. Paragraphs one through 61 are incorporated by reference as if set forth fully herein.

63. On or about December 31, 2012, the Refund was paid to FBOP. Upon

information and belief, FBOP deposited the Refund in the Escrow Account, which is subject to the Escrow Agreement among FBOP, the FDIC and the Escrow Agent.

64. PBGC's Offset Claim was, as a result of the Error, mistakenly not deducted from the Refund before the Refund was paid to FBOP. PBGC was entitled to offset of the balance of the Offset Claim against the Refund.

65. To the extent the FDIC-R on its own behalf or on behalf of the Receiverships it represents, receives the Refund without deduction of the balance of PBGC's Offset Claim, the FDIC-R will be enriched.

66. PBGC has been impoverished as a result of the Offset Failure and the FDIC-R's right to or receipt of the Refund without deduction of the balance of PBGC's Offset Claim.

67. To the extent the FDIC-R receives the Refund without deduction of the balance of PBGC's Offset Claim, the FDIC-R will be enriched at PBGC's expense.

68. To the extent the FDIC-R receives the Refund without deduction of the balance of PBGC's Offset Claim, the FDIC-R will be enriched as a result of the Error, and not as a result of any action taken or not taken by PBGC.

69. Retention of the Refund by the FDIC-R violates fundamental principles of justice, equity and good conscience, and would be unjust.

70. There is no agreement between the FDIC-R and PBGC, and no contract governing the obligations of both PBGC and the FDIC-R. Therefore, there is no adequate remedy at law.

## COUNT V
### (MISTAKE OR ACCIDENT)

71. Paragraphs one through 70 are incorporated by reference as if set forth fully

13

herein.

72.     On or about December 31, 2013, the Refund was paid to FBOP. Upon information and belief, FBOP deposited the Refund in the Escrow Account, which is subject to the Escrow Agreement among FBOP, the FDIC and the Escrow Agent.

73.     PBGC's Offset Claim was, as a result of the Error, mistakenly not deducted from the Refund before the Refund was paid to FBOP. PBGC was entitled to offset the balance of the Offset Claim against the Refund.

74.     The Error deprived PBGC of its recovery of the Offset Claim to which it is entitled under 26 U.S.C. § 6402 and 29 U.S.C. § 3720A.

75.     The nonpayment to PBGC of its Offset Claim was a mistake or accident for which PBGC had no negligence or responsibility.

## REQUEST FOR RELIEF

WHEREFORE, PBGC respectfully requests this Court issue an order granting the following relief:

1.      As to Count I, a declaratory judgment that (i) PBGC has taken all necessary action to effectuate and record its right to offset the Offset Claim against FBOP under 26 U.S.C. § 6402 and 29 U.S.C. § 3720A, (ii) PBGC has not taken any action inconsistent with its right to offset the Offset Claim under 26 U.S.C. § 6402 and 29 U.S.C. § 3720A, (iii) PBGC did not waive its right to offset the Offset Claim under 26 U.S.C. § 6402 and 29 U.S.C. § 3720A against the Refund, (iv) PBGC retains its right in the Escrowed funds to the extent of the balance of the Offset Claim, and a judgment ordering the Escrow Agent to pay PBGC the balance of the Offset Claim.

2.      As to Count II, a declaratory judgment that (i) FBOP was unjustly enriched when it received the Refund without deduction of PBGC's Offset Claim, (ii) right to or retention of the Refund by FBOP without deduction of the balance of PBGC's Offset Claim violates fundamental principles of justice, equity and good conscience and would be unjust, and a judgment ordering the Escrow Agent or FBOP to pay PBGC the balance

of the Offset Claim.

3. As to Count III, a declaratory judgment that (i) to the extent the Trustee-Assignee has rights to the Refund without deduction of the balance of PBGC's Offset Claim, the Trustee-Assignee has been unjustly enriched, (ii) rights to or retention of the Refund by the Trustee-Assignee without deduction of the balance of PBGC's Offset Claim violates fundamental principles of justice, equity and good conscience and would be unjust, and a judgment ordering the Escrow Agent, or the Trustee-Assignee, to pay PBGC the balance of the Offset Claim.

4. As to Count IV, a declaratory judgment that (i) to the extent the FDIC-R has rights to the Refund without deduction of the balance of PBGC's Offset Claim, the FDIC-R has been unjustly enriched, (ii) rights to or retention of the Refund by the FDIC-R without deduction of the balance of PBGC's Offset Claim violates fundamental principles of justice, equity and good conscience and would be unjust, and a judgment ordering the Escrow Agent, or the FDIC-R, to pay PBGC the balance of the Offset Claim.

5. As to Count V, a declaratory judgment that (i) payment of the Refund to FBOP without deduction of the balance of PBGC's Offset Claim was a mistake caused by the Error, and a judgment ordering the Escrow Agent to pay PBGC the balance of the Offset Claim.

6. A judgment ordering all parties with control over the funds to make restitution or pay equitable damages to PBGC in the amount of the balance of the Offset Claim plus any interest attributable thereto or take any actions necessary for such restitution to be made.

7. A judgment imposing a constructive trust on the Refund in favor of PBGC.

8. A judgment imposing an equitable lien on the Refund in favor of PBGC in the amount of the balance of the Offset Claim plus any interest attributable thereto.

9. A judgment enjoining the Escrow Agent from distributing any funds from the Escrow Account to any party other than PBGC before PBGC is paid the balance of its Offset Claim and interest attributable thereto, and requiring the Escrow Agent to pay PBGC the balance of its Offset Claim and interest attributable thereto.

10. Such other relief as the Court deems just and proper.

| | |
|---|---|
| Dated: July 8, 2014<br>Washington, D.C. | /s/ Katherine B. Kohn<br>ISRAEL GOLDOWITZ<br>Chief Counsel<br>KAREN L. MORRIS<br>Deputy Chief Counsel<br>STEPHANIE THOMAS<br>Assistant Chief Counsel<br>KATHERINE B. KOHN<br>COLIN B. ALBAUGH<br>Attorneys<br>PENSION BENEFIT GUARANTY<br>   CORPORATION<br>Office of the Chief Counsel<br>1200 K Street, NW, Suite 340<br>Washington, D.C. 20005-4026<br>202-326-4020, ext. 4779<br>202-326-4112 (facsimile)<br>efile@pbgc.gov |

Attorneys for Pension Benefit Guaranty Corporation