IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as a separate and distinct Receiver of Bank USA, N.A., California National Bank, Citizens National Bank of Teague, Madisonville State Bank, North Houston Bank, Pacific National Bank, Park National Bank, and San Diego National Bank, | ) ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 14 C 4307 |
| FBOP CORPORATION, et al., | ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Before the court is the Pension Benefit Guaranty Corporation's ("PBGC") motion to intervene pursuant to Federal Rule of Civil Procedure 24. (Dkt. No. 20.) This motion arises from a dispute between two federal agencies—PBGC and the Federal Deposit Insurance Corporation ("FDIC")—over money mistakenly transferred to defendant FBOP Corporation ("FBOP") because of a computer glitch at a third federal agency, the Bureau of the Fiscal Service ("BFS"). The government, apparently unable to resolve its dispute internally, seeks the assistance of this court. For the reasons set forth below, PBGC's motion to intervene is granted.

BACKGROUND

The following facts are taken from the FDIC's amended complaint (Dkt. No. 35) and PBGC's motion to intervene (Dkt. Nos. 20, 21), both which the court must accept as true. *See Lake Investors Dev. Group* v. *Egidi Dev. Group*, 715 F.2d 1256, 1258 (7th Cir. 1983) ("In

evaluating the motion to intervene, the district court must accept as true the non-conclusory allegations of the motion and cross-complaint.")

I. The Original Lawsuit

This lawsuit is a dispute over the ownership of a $265 million tax refund, which currently resides in an escrow account pursuant to an agreement between the original parties. (Dkt. No. 35 ¶¶ 20, 22.). The FDIC is a separate and distinct receiver for each of the following eight failed banks: Bank USA, N.A., California National Bank, Citizens National Bank of Teague, Madisonville State Bank, North Houston Bank, Pacific National Bank, Park National Bank, and San Diego National Bank (collectively, the "Banks"). (Dkt. No. 35 at 1-2.) In the years preceding the Banks' failure, FBOP, the Banks' defunct parent company, filed tax returns as the common parent of a consolidated tax group that included FBOP, the Banks, and FBOP's non-bank subsidiaries. (*Id.*) On December 31, 2013, more than four years after the FDIC put the Banks into receivership, the Department of the Treasury paid FBOP a federal tax refund of approximately $265 million. (Dkt. No. 21 ¶ 15.) On June 10, 2014, the FDIC filed the instant lawsuit against FBOP, FBOP's Trustee-Assignee, and a number of FBOP's creditors to determine the ownership of the $265 million tax refund, which now sits in the escrow account awaiting the result of this lawsuit. (Dkt. No. 35 ¶¶ 20, 22.)

II. Non-Party PBGC's Claim

PBGC is a government corporation established to backstop underfunded pension plans when employers go belly up. (Dkt. No. 21 ¶ 1.) When a pension plan terminates with underfunded liabilities, PBGC becomes the plan's trustee and, subject to statutory limits, pays pension benefits to plan participants. (*Id.*) Before its collapse, FBOP, like many employers, sponsored and administered a pension plan to provide benefits to its employees and their

beneficiaries. (*Id.* ¶ 5.) And like many employers, FBOP's pension fund was significantly underfunded—in this case, by $40.5 million. (*Id.* ¶ 6.)

On April 27, 2011, PBGC filed a complaint in this district court seeking an order (a) terminating the FBOP pension plan, (b) appointing PBGC as trustee of the plan, and (c) establishing April 21, 2011 as the termination date for the pension plan. (*Id.* ¶ 7); *see also PBGC* v. *FBOP Corp.*, No. 11 C 2788 (N.D. Ill.) (Dkt. No. 1). PBGC's complaint further asserted a right to collect unfunded benefit liabilities through an offset against FBOP's future tax refunds pursuant to 31 U.S.C. § 3720A. (*Id.* ¶ 8.) On August 21, 2012,[1] PBGC, FBOP, and two of FBOP's creditors—JPMorgan Chase Bank, N.A. ("JPMorgan") and BMO Harris Bank, N.A. ("BMO")—entered into an agreement to settle the case (the "Settlement Agreement"). (*Id.* ¶ 9.) Under the Settlement Agreement, FBOP agreed to (1) terminate the FBOP pension plan and (2) not oppose the PBGC's referral to the Treasury Offset Program ("TOP") a claim of $30 million to account for the unfunded pension liabilities (the "Offset Claim"). (*Id.*) JPMorgan and BMO likewise agreed not to oppose the $30 million Offset Claim. (*Id.*)

The same day, as required by statute, PBGB sent FBOP a formal notice of (1) the past-due, legally enforceable debt owed to PBGC in the amount of $30 million and (2) PBGC's intention to refer the debt to BFS[2] for an offset against FBOP's forthcoming tax refund. (*Id.* ¶

---

[1] PBGC's motion to intervene states that the parties settled the case on August 21, 2013. (Dkt. No. 21 ¶ 9.) According to the docket, however, the parties filed a joint stipulation of dismissal on August 23, 2012. *See PBGC* v. *FBOP Corp.*, No. 11 C 2788 (N.D. Ill.) (Dkt. No. 164). The court assumes PBGC and FBOP entered into the Settlement Agreement on August 21, 2012, not 2013.

[2] At the time, BFS was known as the Financial Management Service. (Dkt. No. 21 ¶ 12.)

11.) PBGC sent a similar notice to the FDIC as receiver for the Banks.[3] (*Id.*) On October 23, 2012, PBGC referred its $30 million Offset Claim to BFS and recorded the Offset Claim in the TOP. (*Id.* ¶ 12.)

On December 18, 2012 and January 2, 2013, PBGC received payments of $8,780 and $175 through the TOP pursuant to its Offset Claim. (*Id.* ¶ 13.)

III.  BFS's Computer Glitch

On December 31, 2013, the Department of the Treasury, through BFS, paid FBOP the $265 million federal tax refund at the heart of this case. (Dkt. No. 21 ¶ 15.) BFS issued the refund as five separate paper checks, each paired with a form titled "Manual Refund Posting Voucher." (*Id.* ¶¶ 15-16.) On each form, a box labeled "Yes (Allow TOP Offset, BPI-0)" was checked. (*Id.* ¶ 17.) Unfortunately, despite literally "checking all of the boxes," BFS did not deduct the remainder of PBGC's $30 million Offset Claim from the $265 million tax refund. (*Id.* ¶ 18.) PBGC alleges, and BFS apparently acknowledges, that the sole reason BFS did not deduct PBGC's Offset Claim was a "computer glitch" in its payment system, which will be corrected in a forthcoming software update called "PAM Release 7.0."[4] (*Id.* ¶¶ 19-20.)

PBGC now seeks to intervene in this lawsuit to recover the portion of the tax refund that, pursuant to 31 U.S.C. § 3720A, should have been deducted and paid to PBGC before any refund

---

[3]  Section 3720A requires a federal agency, in this case PBGC, to give the debtor at least 60 days to present evidence that all or part of the debt is not past-due or not legally enforceable. 31 U.S.C. § 3720A(b)(2). The FDIC does not assert that it objected to the Offset Claim after receiving notice from PBGC.

[4]  BFS's website confirms the same. *See PAM Project News*, Bureau of the Fiscal Service, http://www.fms.treas.gov/pam/news.html (last visited Aug. 28, 2014) ("PAM [Release 7.0] will automate processing, issuing, and reporting of large dollar check amounts including processing through the Do Not Pay (DNP) and Treasury Offset (TOP) applications.").

issued to FBOP. The proposed complaint attached to PBGC's motion sets forth a number of grounds for recovering the Offset Claim, including the federal statutory framework (Count I), unjust enrichment (Counts II-IV), and mistake or accident (Count V). (Dkt. No. 21 Ex. A.) FBOP, its trustee-assignee, and its creditors have consented to PBGC's intervention. The FDIC, however, opposes intervention. The FDIC argues that the court lacks jurisdiction to adjudicate PBGC's claims and, even if the court had jurisdiction, PBGC fails to satisfy the requirements of Rule 24(a).

## ANALYSIS

I.  Subject Matter Jurisdiction

The FDIC first argues that the court lacks subject matter jurisdiction over PBGC's claims against the FDIC, which is a threshold requirement for mandatory or permissive intervention under Rule 24. *See, e.g.*, *Security Ins. Co. of Hartford* v. *Schiepporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995) (intervenor must prove "independent jurisdiction" over proposed claims). Although the court has jurisdiction over PBGC's claim pursuant to 28 U.S.C. § 1331, 1345, and 1367(a), the FDIC contends that the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183 (1989), as codified in 12 U.S.C. § 1821(d)(3) through (d)(13), imposes a jurisdictional restriction on PBGC's claim.

Under FIRREA, the FDIC has authority to administer claims against a failed bank for which the FDIC is receiver. *Farnik* v. *FDIC*, 707 F.3d 717, 720-21 (7th Cir. 2013). Courts lack jurisdiction to hear "any claim or action for payment from, or any action seeking a determination of rights with respect to, the *assets* of [a failed bank]," unless the plaintiff in such an action has first presented the claim to the FDIC. 12 U.S.C. § 1821(d)(13)(D)(i) (emphasis added); *see also Campbell* v. *FDIC*, 676 F.3d 615, 617 (7th Cir. 2012) ("FIRREA bars claimants from taking

claims directly to court without first going through an administrative determination.").

The FDIC contends that the "genesis" of PBGC's claim relates to the unfunded pension liabilities of the Banks, is fundamentally a claim against the "assets" of the failed Banks, and consequently must be submitted to the FDIC's administrative claims process. (Dkt. No. 32 at 7.) The court does not agree. PBGC's claim relates to the tax refund at the center of this litigation. Notwithstanding the FDIC's assertion that the refund belongs to the Banks, and is thus an "asset" of the Banks, the court has not yet made such a determination. To the contrary, the allegations in PGBC's motion assert that FBOP acquired PBGC's share of the refund because of BFS's computer error. If the offset process had functioned properly, PBGC would have received its Offset Claim before the refund issued and the instant lawsuit would concern the ownership of a $235 million tax refund, not a $265 million refund. In other words, PBGC's claim is not a claim against an "asset" of the Banks; it is a claim for a portion of the tax refund which, under federal law, neither the Banks nor FBOP should ever have received. Consequently, because PBGC's motion does not assert a claim against an "asset" of the Banks, PBGC was not required to first present its claim to the FDIC's claim process under FIRREA for this court to acquire jurisdiction.

II.   Intervention as a Matter of Right

The court, having determined that it has jurisdiction to adjudicate PBGC's claim, must evaluate whether intervention is proper pursuant to Rule 24. PBGC initially argues that the court should permit intervention as a matter of right. A non-party has a right to intervene in an action if (1) the non-party files a timely motion to intervene; (2) the movant claims an interest related to the subject matter of the action; (3) disposition of the action threatens to impair or impede the movant's ability to protect that interest; and (4) the movant's interest is inadequately represented

by the existing parties. *Ligas ex rel. Foster* v. *Maram*, 478 F.3d 771, 773 (7th Cir. 2007) (citing *United States* v. *BDO Seidman*, 337 F.3d 802, 808 (7th Cir. 2003)). "A failure to establish any of these elements is grounds to deny the petition." *Id.*

Here, the FDIC concedes that PBGC's motion is timely, that PBGC has an interest related to the subject matter of the action, and that PBGC's interest is inadequately represented by the parties. (Dkt. No. 32 at 8-9.) The FDIC argues that PBGC's intervention should not be permitted solely because PBGC cannot show that its interests are impaired by the litigation. (*Id.*) Specifically, the FDIC contends that PBGC's interests will not be impaired because the administrative claims process—FIRREA—provides the proper procedure to address PBGC's claims against the FDIC. (*Id.* at 8.)

The FDIC's argument suffers from the same flaws as its jurisdictional argument. As a threshold matter, "the mere availability of alternative forums is not sufficient to justify denial of a motion to intervene." *Commodity Futures Trading Com'n* v. *Heritage Capital Advisory Servs.*, 736 F.2d 384, 387 (7th Cir. 1984) (citations omitted). More importantly, as discussed above, the FDIC's administrative process is not available to PBGC because its claim is for a share of the tax refund, which is not presently an asset of the Banks. If the FDIC prevails in its lawsuit against FBOP, a portion of the tax refund might become an asset of the Banks. PBGC has apparently filed administrative claims with the FDIC as a protective tactic against this very outcome, although its administrative claims are based on the unfunded pension liabilities, not its independent federal right to an offset against FBOP's tax refund. (Dkt. No. 33 at 7-8.) Even then, however, PBGC would only be able to recover a maximum of $28 million,[5] and possibly much

---

[5] According to PBGC, PBGC and the FDIC have a Memorandum of Understanding that caps

less depending on the FDIC's administrative determination. (Dkt. No. 33 at 8.) Consequently, even if the FIRREA process provided a viable alternative forum for PBGC's to pursue its claim against the tax refund—and the court finds that it does not—PBGC would still lose a minimum of $2 million on its $30 million Offset Claim. Thus, ignoring PBGC's federal right to its Offset Claim and forcing PBGC to submit its claim to the FDIC, as the FDIC urges the court to do, would impair PBGC's right to protect its interest fully. PBGC is therefore entitled to intervene as a matter of right under Rule 24(a).

Although the court need not decide whether PBGC is entitled to intervene under Rule 24(b), it is worth noting that this is a clear case for permissive intervention. Under Rule 24(b), the court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact . . . unless the intervention will unduly delay or prejudice the adjudication of the original parties' rights." This is a case about the ownership FBOP's tax refund. PBGC claims that it is owns a portion of the refund that BFS mistakenly transmitted to FBOP because of a computer error. The existence of a "common question" under Rule 24(b)(1)(B) is clear, and intervention will likely accelerate a final determination concerning the ownership of the tax refund.

CONCLUSION

For the reasons explained above, PBGC's motion to intervene pursuant to Federal Rule of Civil Procedure 24 [20] is granted. PBGC shall file its complaint, which is attached to its motion

---

PBGC's possible recovery in administrative process at $28 million. (Dkt. No. 33 at 8.) It is not clear whether the agencies' agreement is limited to this matter or if it is a general understanding applicable every time a bank fails.

as Exhibit A, by 9/4/14. The FDIC and Defendants shall answer or otherwise plead by 10/2/14. Counsel for the parties, particularly counsel for the two federal agencies at odds in this motion, are strongly encouraged to discuss settlement to resolve this internal government dispute. The case is set for a status report on settlement and scheduling at 9:00 a.m. on 10/14/14.

ENTER:

_____
JAMES F. HOLDERMAN
District Judge, United States District Court

Date: September 2, 2014